* Parker, C. J.,
delivered the opinion of the Court The sale of the goods from Joseph Marcy to his brother, the plaintiff, having been found by the jury to be fraudulent against creditors (1), the only question, reserved for the consideration of the Court, was, whether the defendant had a right, by law, to question the validity of the sale, which, notwithstanding its fraudulent intent, was good between the vendor and vendee.
The defendant, having taken the goods upon an execution m favor of a creditor of an incorporated manufacturing company, and having proceeded under the statute of 1808, c. 65, “defining the general powers and duties of manufacturing corporations,” so as to authorize him to take the goods or person of any member of the company, has certainly a right, in behalf of the creditors, for whom he was acting officially, to a restoration of the property; *269 provided Joseph Marcy was a member of the company when the defendant seized the goods.
The defendant had the same authority and right over the goods of Joseph Marcy, as he would have had if the execution had been against him nominally. The statute makes every member of a manufacturing corporation, against which judgment has been rendered, virtually a judgment debtor; and, by force of the statute, the execution is against every such member, although not named in the precept. The officer, therefore, who has seized the goods belonging to a member, or found in his possession, must, of necessity, have a right to defend his possession, or to recover it, if it should be lost.
The sixth section of the statute before referred to provides for the liability of the estate, and of the person of any member of a manufacturing corporation, which shall not, in fourteen days after demand, satisfy any execution which shall issue against it. Here a question arose, at what time the individual should be a member, to make him incur the liability ; and it was determined that the execution might be levied upon him, who was a member at the time of the *levy. Indeed, no other construction [ * 334 ] could be given to the statute; for none but a member was made liable, and one who had sold his share in the corporate property certainly did not continue a member.
The question arising in this case is, whether Joseph Marcy was a member of the company at the time the goods were taken. Before the execution was levied, he had made a bill of sale of his share to one Edwards, without adequate consideration, and for the express purpose, as found by the jury, of avoiding his liability to the execution as a member of the corporation. It was contended that he had a right thus to shift the burden from himself, and to give away his shares, if he chose.—It is true every man may dispose of his own property as he pleases; but always subject to the equitable principle, that he is not to injure another by his gift. Sic utere tua ut alienum non Icedas is a maxim of eternal justice, as well as law (2).
The legislature have thought fit, and we think wisely, to subject the property of all members of these corporations to a liability for the debts of the company. By this, in fact, they only continue the principle of copartnership in operation; and, considering the multitude of corporations, which the increasing spirit of manufacturing gives rise to,, regard to the interest of the community seems to require that the individuals whose property, thus put into a common mass, enables them to obtain credit universally, should not shelter *270 themselves from a responsibility to which they would be liable as members of a private association. Since this statute was enacted, all who deal with such companies, look for their security to the individual members, rather than to the joint stock; and to suffer those members to avoid their responsibility by parting with their stock, would be to deprive the creditor of a vested right, and of the means of satisfying his debt. For such a measure would not be resorted to, but in case of the actual or expected insolvency of the company.
We cannot doubt, then, that a transfer of an interest [ * 335 ] in *the stock of such corporations, not Iona fide, but for the purpose of defeating the creditors of the company, is fraudulent and void. Otherwise the wholesome provision of the statute for the security of creditors would be unavailing at the very time, and in the very circumstances, in which it was intended to operate.
Under the statute we have been considering, those who are liable must be members when the execution is levied. But the legislature have thought that a further security was necessary; for there may be bona fide sales, by which the shares may be transferred from those who are able to those who are unable to pay debts existing at the time of the transfer; and it was reasonably thought that it was to the credit of those who were members when the debt was incurred, that the creditor trusted. It was, therefore, provided by the statute of 1817, c. 183, that the bodies and estates of those who were members at the time any debt accrued, as well as of those who were members when the execution issued, should be liable (3). So that even a bona fide transfer of shares will not relieve the member from any debt which accrued while he was a member of the corporation.
These statutes have been objected to, as infringing some of the principles of our constitution, particularly the twelfth and fifteenth articles of the declaration of rights; the first of which is intended to secure the liberty and property of the subject, and the second to establish the right of trial by jury. It is said that these statutes authorize a man’s estate or body to be taken on execution, without any judgment against him, and without any hearing in the action upon which the judgment was rendered.
If it were so, undoubtedly the statutes would be void. But all who are members of the corporation are virtually defendants in the *271 action, and have an opportunity to be heard in the form they have chosen by joining the company. As to those who become members after judgment against a corporation, or after the debt has accrued, they voluntarily subject themselves to the inconvenience, having * the means to satisfy themselves of the solven- [ * 336 ] cy of the company, if they choose to make inquiry. Those who become inhabitants of towns after a liability for debt is incurred, are in the same predicament." We see no cause for a new trial (4). Judgment on the verdict.

 [How could the sale, unless by a strange confusion of ideas, be called fraudulent as to creditors, when the levy was not made on the shares, and the sale, as between the vendor and vendee, was admitted to be valid ?—Ed.]

 [This, at least, is an odd application of the maxim, and the sound sense oí it if not quite apparent.—Ed.]

 [This act was passed February 24,1818, and related to corporations only which should thereafter be created. If it had any bearing in the present case, it tended to show that such persons were not before liable, and therefore that the defendant way not liable.—Ed.]

 [This is a most extraordinary decision. The question was, whether Marcy was a member of the corporation at the time of the levy. He had a right, undoubtedly, to divest himself of his membership at any time. It did not depend on the consideration received, or his purpose in doing it. No one had a right to question the intent with which it was done. It was admitted he had done so, and yet he was held liable.—Ed.]