## Thomas N. Chase versus The President &c. of the Merrimack Bank.

An execution against a territorial parish may be levied on the property of an individual member of the parish.

Such an execution cannot be levied on the property of one who was a member of the parish at the time of the rendition of judgment but has ceased to be a member before the commencement of the levy.

A parish having voted, in 1831, that an individual should be a member, and he having afterwards attended and voted at parish meetings and having been chosen and having acted as a trustee of the parish funds, it. was *held* that he was a member, although he had not filed any certificate of membership pursuant to *St.* 1811, *c.* 6, or *St.* 1823, *c.* 106.

Where an officer, who had levied an execution on bank shares, returned that he advertised the time and place of sale three weeks successively before the *time* (instead of the *day*) of sale, it was *held* that the return showed a sufficient notice, under *St.* 1804, *c.* 83.

An officer having an execution against a parish, levied it on bank shares belonging to an individual member of the parish, but in his return he omitted to state that he left a copy of the execution and return with the cashier of the bank. An action having been brought by such individual against the bank, to recover a dividend on the shares taken on execution, the officer, upon producing satisfactory proof that he had so left such copy, was *permitted to amend his return accordingly.*

This was an action to recover a dividend declared by the Merrimack Bank, on the 5th of October, 1835.

On a case stated it appeared, that ever since the 6th of

April, 1835, the plaintiff has been the owner of three shares in the bank and entitled to the dividend thereon, unless the following facts show that he was divested of the shares. The dividend was duly demanded of the cashier.

On the 9th of April, 1831, the plaintiff resided in Haverhill, but not within the limits of the North Parish. The North Parish was a territorial parish. The plaintiff removed into that territory in June 1832. This was not the oldest parish in Haverhill. Some persons residing in the North Parish were not members thereof, and some members thereof were not residents therein. At a meeting of the parish on the 9th of April, 1831, it was voted, " that the clerk grant Thomas N. Chase a certificate as a member of said parish." The application for his admission was not made by the plaintiff himself, but by one Brickett. The plaintiff was present at the meeting, and has since that time and before the seizure of his bank shares, attended the parish meetings and voted as others, members of the parish. He was chosen trustee of the ministerial funds in July 1833, and has acted as such trustee.

At the April term 1835, of this Court, Samuel H. Peckham recovered a judgment against the North Parish in Haverhill, for $350·17 ; (see 16 Pick. 274 ;) on which an execution was issued, and was delivered by Peckham to Charles L. Bartlett, a deputy sheriff, to be executed. A demand of payment was made by the officer on the treasurer of the parish, but was not complied with. The parish had ministerial funds and parsonage lands, but no corporate property on which the execution could be satisfied. Its meetinghouse, which stands in the adjoining town of Plaistow, in New Hampshire, is very old, and of little value.

The officer levied the execution and made a return thereon, dated the 9th of July, 1835, that by virtue of the execution he seized three shares in the stock of the Merrimack bank, as the property of Chase, being an individual member of the North Parish in Haverhill, and gave him notice in writing &c., that the shares would be sold to satisfy the execution and all costs and charges, to the highest bidder, on the 8th of August, at 2 o'clock, P. M., at the auction room &c. in Haverhill, and also gave public notice of the sale by posting up notifications there-

of in two public places in the town and in one public place in each of the towns of Bradford and Plaistow, being towns adjoining Haverhill, thirty days before the time appointed for the sale, and also caused an advertisement thereof, expressing the time and place of sale and against whom the execution issued, to be published three weeks successively before the "time" appointed for the sale, in the Essex Gazette, a newspaper printed in Haverhill; that at the time and place appointed he sold the shares, by public auction, to one Corliss, for $505·50, and therewith satisfied the execution and all fees and charges of sale, and deposited the balance with the cashier of the bank, to be passed to the credit of Chase. Among the charges were, for "copy of execution to cashier, 50 cents; copy of execution and return, 75; for recording do. 75." It was agreed that the return might be considered as amended by inserting therein a statement, that at the time of the alleged seizure of the stock, the officer left with the cashier an attested copy of the execution, and within fourteen days after the sale he left with the cashier a copy of the execution and return, and paid the fee for recording it, provided however, that if the Court should be of opinion that the officer ought not to be permitted, upon a proper application to them, so to amend, upon satisfactory evidence of the truth of these allegations, the Court should decide the cause as if the return had not been amended.

The defendants issued certificates of the shares to Corliss, the purchaser, and paid him the dividend claimed in this action.

*Nov.* 10*th.*       *Choate* and *Duncan*, for the defendants, now read a motion that the officer might be permitted to amend his return on the execution of Peckham against the North Parish in Haverhill.

To the point, that the members of a parish are individually liable for the debts of the parish, they cited *Merchants' Bank* v. *Cook*, 4 Pick. 414; *Riddle* v. *Merrimack Locks &c.* 7 Mass. R. 187; 5 Dane's Abr. 158, § 11; *Adams* v. *Wiscasset Bank*, 1 Greenleaf, 361; *Fernald* v. *Lewis*, 6 Greenleaf, 264; Angell and Ames on Corp. 374; 2 Kent's Comm. (3d ed.) 274; *Attorney-General* v. *Exeter*, 2 Russell's Ch. R. 45; *Leigh* v. *Chapman*, 2 Saund. 423; *Pinkney* v. *Inh.*

*de Rotel,* 2 Saund. 374, and notes ; Com. Dig. *Hundred,* C 2, C 5; and to the point, that the officer's return was amendable, *Thatcher* v. *Miller,* 11 Mass. R. 413 ; *Welles* v. *Battelle,* 11 Mass. R. 481 ; *Haven* v. *Snow,* 14 Pick. 28 ; as to leaving a copy of the execution and return with the cashier, *Pemigewasset Bank* v. *Burnham,* 5 N. Hamp. R. 275 ; and as to the plaintiff's being a member of the North Parish in Haverhill, *Leavitt* v. *Truair,* 13 Pick. 111.

*Cushing* and *Minot,* for the plaintiff. In general, the members of bodies corporate are not liable individually for the debts of the corporation. *Russell* v. *The Men of Devon,* 2 T. R. 672 ; *Nichols* v. *Thomas,* 4 Mass. R. 232 ; *Fernald* v. *Lewis,* 6 Greenleaf, 264.

Nor is there any decision that *quasi* corporations form an exception to the general rule, though there are *dicta* of judges to that effect ; *Riddle* v. *Merrimack Locks &c.* 7 Mass. R. 187 ; *Hawkes* v. *County of Kennebeck,* 7 Mass. R. 463 ; *Brewer* v. *New Gloucester,* 14 Mass. R. 216 ; *Merchants' Bank* v. *Cook,* 4 Pick. 414 ; but the legislature have deemed it necessary to make express provisions that the inhabitants of towns &c. shall be individually liable in particular cases. *St.* 1799, *c.* 51 ; *St.* 1784, *c.* 41, § 1.

But if any corporation forms an exception to the general rule, it is one composed of all the inhabitants of a territorial district, and of which no other person is a member. Parishes in general, and the North Parish in Haverhill in particular, are not so constituted at the present day ; *Riddle* v. *Merrimack Locks &c.* 7 Mass. R. 187 ; *Hawkes* v. *County of Kennebeck,* 7 Mass. R. 463 ; *Brewer* v. *New Gloucester,* 14 Mass. R. 216 ; *St.* 1811, *c* 6, § 2 ; 1823, *c.* 106, § 2 ; 1834, *c.* 183 ; but it was otherwise when the doctrine of the individual liability of the members was applied to them. Ancient Chart. &c. 374, 435, 487, 491 ; *St.* 1786, *c.* 10, § 1, 3, 5 ; *St* 1807, *c.* 63.

The plaintiff has never been a member of the North Parish in Haverhill, not having filed a certificate according to the requisitions of *St.* 1811, *c.* 6, or *St.* 1823, *c.* 106.

The execution in favor of Peckham, which commanded the officer to levy on "the goods, chattels or lands of the said par-

Chase
v.
Merrimack
Bank.

ish," did not authorize a levy on the property of an individual. *Nichols* v. *Thomas*, 4 Mass. R. 232.

By the officer's return it appears, that the bank shares were not levied on in due form of law ; and the proposed amendment cannot be allowed, so as to injure third persons. *Emerson* v. *Upton*, 9 Pick. 167 ; *St.* 1804, *c.* 83, § 1, 2, 5.

The levy is insufficient, inasmuch as it does not appear tnat the advertisement of the sale was published three weeks successively before the *day* of sale. The expression ' before *the day* of sale," excludes that day ; " before *the time* of sale," does not. *St.* 1804, *c.* 83, § 3.

The notifications were not posted up in two adjoining towns, within the meaning of the statute. The posting up in Plaistow, in the State of New Hampshire, was an act extra-official and void. *Arnold* v. *Tourtellot*, 13 Pick. 172.

*Choate*, in reply to this last objection, said that the posting up in Plaistow was within the letter of the statute, and likewise within the spirit of it, the object being to procure the attendance of bidders at the auction ; that the adjoining towns in this State were remote, being six or eight miles from the place of sale ; and that a sheriff has no more power out of his county than out of his State, but there are some towns which do not adjoin two other towns in the same county, for instance, Ashby and Nantucket.

WILDE J. afterward drew up the opinion of the Court. This case has been very ably argued, and if the principal question raised were now to be decided for the first time, it might be necessary to enter into the discussion of the principles on which it depends, more fully than we now deem it necessary to do. The question is whether, on an execution against a town or parish, the body or estate of any inhabitant may be lawfully taken to satisfy it. The question appears to have been settled in the affirmative by a series of decisions, and ought no longer to be considered as an open question.

It is generally true that an individual member of an aggregate corporation is not liable for any debts or demands against it. But to this principle, says *Dane*, our towns and parishes in Massachusetts are by immemorial usage an exception    For on

such an execution the body or estate of any inhabitant may be taken to satisfy it. 5 Dane's Abr. 158.

The same doctrine is laid down by Chief Justice *Parsons*, in *Riddle* v. *Merrimack Locks &c.* 7 Mass. R. 187 ; and the sound reason, it is said, is, that as towns, and other such *quasi* corporations, have no corporate fund, and no legal means of obtaining one, each corporator is liable to satisfy any judgment rendered against the corporation.

In the case of the *Inhabitants of Brewer* v. *The Inhabitants of New Gloucester*, 14 Mass. R. 216, it was decided, that when judgment is recovered against the inhabitants of a town, execution may be levied upon the property of any inhabitant, as each inhabitant must be considered as a party to the suit. And there is clearly no distinction, in this respect, between the liability of an inhabitant of a town and that of an inhabitant of a parish.

The same doctrine is laid down in *Merchants' Bank* v. *Cook*, 4 Pick. 414. " Towns, parishes, precincts, &c. are," it is said, " but a collection of individuals with certain corporate powers for political and civil purposes, without any corporate fund from which a judgment can be satisfied, but each member of the community is liable in his person or estate to the execution which may issue against the body."

The same principle has been recognized as settled law in the State of Maine. *Adams* v. *Wiscasset Bank*, 1 Greenleaf, 361 ; *Fernald* v. *Lewis*, 6 Greenleaf, 264. And it is so considered by Chancellor *Kent*, in his Commentaries. 2 Kent's Comm. (3d ed.) 274.

So in the case of the *Attorney-General* v. *The Corporation of Exeter*, 2 Russell, 53, Lord *Eldon* held, that if a fee farm rent was chargeable on the whole of a city, it might be demanded of any one who holds a part of or in the city, and he would be left to obtain contribution from the other inhabitants.

These authorities we consider as conclusive and binding, whether they be founded on general principles, or on an analogy between the liabilities of the inhabitants of towns and parishes and hundreds, or upon immemorial usage.

It is, however, denied by the plaintiff, that he was one of the inhabitants of the North Parish in Haverhill, against whom

the execution issued, and on which his property has been taken; because he did not file a certificate of membership, as directed by the statute of 1811, *c*. 6, or by that of 1823, *c*. 106. But these statutes do not prohibit a party from joining a parish in any other manner than is therein prescribed, as was decided in *Leavitt v. Truair*, 13 Pick. 113. The agreement of the parties is sufficient to constitute membership. The plaintiff in 1831 was admitted as a member of the parish, by a vote of the parish; he has since attended the parish meetings and has voted as other members of the parish have, and has been chosen a trustee of the ministerial funds of said parish. These acts constitute him a member of the North Parish, whether by reason of his not filing a certificate, in pursuance of the act of 1823, *c*. 106, he is liable to be taxed in another par ish or not.

The next question to be considered is, whether the officer gave sufficient and legal notice of the time and place of sale of the bank shares taken on execution. By the return of the officer it appears, that notifications were posted up, as the law directs, in two public places in the town where the sale was to be made, and in one public place in each of two adjoining towns, thirty days before the time appointed for the sale; and that an advertisement, expressing the time and place of sale, and against whom the execution issued, was published three weeks successively, before the time appointed for the sale, in the Essex Gazette, a newspaper printed in said Haverhill. The objection to the sufficiency of the notice is, that it was not published three weeks before the *day* of the sale, as the statute requires, but three weeks before the *time* of sale But we are of opinion that the statute ought not to be thus strictly construed. The *time* of sale and the *day* of sale are, we think, named in the statute indiscriminately, and that they were intended to convey the same meaning, and to have the same effect. That sufficient notice was given for all useful purposes, cannot be doubted, and a literal and strict construction ought not to be adopted to defeat a fair sale.

The other objection to the return of the officer is removed by an amendment of the return, which we are of opinion the

officer ought to be allowed to make, the truth of the facts having been satisfactorily proved.

Chase<br>v.<br>Merrimack<br>Bank.

*Judgment for the defendants.*

Peckham subsequently recovered another judgment against the North Parish in Haverhill, and delivered his execution to Bartlett, who levied it on three other shares in the Merrimack bank, belonging to Chase ; and Chase brought his action against the bank to recover a dividend on these three shares. In this case it appeared, that on the 4th of April, 1836, between 6 and 7 o'clock in the morning, Chase signed and delivered to the clerk of the North Parish a certificate that he no longer considered himself a member of that parish ; that since that time he had continued to be one of the trustees of the ministerial fund, and had been present at one or more parish meetings, but it did not appear that he had acted or voted thereat as a member ; and that on the same 4th of April, in the afternoon, the officer seized these three shares on the execution, and afterwards sold them and made a return like the one in the former case.

*Choate* and *Duncan* contended, that the plaintiff's liability to Peckham's execution was fixed by the judgment, and was not affected by his subsequently ceasing to be a member of the parish. *Fernald* v. *Lewis*, 6 Greenleaf, 264 ; *Whittemore* v. *Smith*, 17 Mass. R. 347 ; *Marcy* v. *Clark*, 17 Mass. R. 330.

*Nov. 10th*<br>1837.

*Cushing* and *Minot*, for the plaintiff.

*Per Curiam.* Upon the facts agreed, the plaintiff, we think, is entitled to recover the amount of the dividend claimed, as before the sale of the shares he had ceased to be a member of the parish. The execution therefore did not run against him or his property, although he was a member of the parish when judgment was recovered.