Shaw, C. J.
This case, like the next preceding one, is apparently brought without regard to the form of action in which the plaintiff seeks his remedy ; but, by consent of both parties, certain facts are agreed, upon which the parties, ask the opinion of the court, whether in any form of proceeding, at law or in equity, the plaintiff has any remedy; agreeing so to amend the pleadings, if necessary, as to make the judgment regular.
The action is brought against the sheriff, by the plaintiff, claiming to be the proprietor, in trust, of ten shares in the capital stock of the South Bank, and four shares in the South Cove Corporation, taken by the defendant’s deputy, on an execution against the American Stationers Company. It appears that the plaintiff, as the trustee of Mrs. Clarissa B. Shattuck, a married woman, held the above described shares, and also, upon the same trust, certain shares in the capital stock of the American Stationers Company, a manufacturing corporation. This company was incorporated by an act passed March 31st 1836, (St. 1836, c. 100,) by which they were invested with all the powers and privileges, and subject to all the duties, restrictions *119 and liabilities, set forth in the 38th and 44th chapters of the revised statutes. Those statutes had then been enacted and published, though they had not gone into operation. But by this provision, they are adopted and made part of the act of incorporation, as if they had been recited at length; and we are to resort to the provisions of the revised statutes for the rules of law fixing the rights and duties of this corporation, not because those statutes then had, or have since acquired, the force of law, proprio vigore, but because the chapters in question are thus, by reference to them, made a constituent part of this act of incorporation.
The question is, whether, in any mode of proceeding, the South Cove shares and the South Bank shares were liable, in the hands of the plaintiff, for the debt due from the American Stationers Company to the Lancaster Bank. This depends upon the provisions of law making the individual members of manufacturing corporations liable, in certain cases, for the debts of the corporation.
The Rev. Sts. c. 38, <§> 16, declare that “all the members of every manufacturing company, incorporated,” &c. (including the Stationers Company,) “ shall be jointly and severally liable for all debts and contracts made by such company, until the while amount of the capital stock, fixed by the company in manner aforesaid, shall have been paid in, and a certificate thereof shall have been made and recorded in the registry of deeds, as prescribed in the succeeding section.”
By <§, 34 of the same chapter, it is enacted that “ no persons, holding stock in any manufacturing company, as executors, administrators, guardians or trustees, and no persons, holding such stock as collateral security, shall be personally subject to any liabilities as stockholders of such company; but the person pledging such stock shall be liable as stockholder, and the estates and funds, in the hands of such executors, administrators, guardians and trustees, shall be liable in their hands, in like manner and to the same extent, as the deceased testator or intestate, or the ward, or person interested in such trust fund, would have been, if they had respectively been living *120 and competent to act, and had held the same stock in theii own names.”
From these provisions, it is manifest that the South Cove shares and the South Bank shares, being held by the plaintiff as trustee on the same trust on which he held the Stationers Company shares, he was liable, to the extent of the value of those shares in his hands, if in other respects the company was in such a condition, that, by force of the above provisions of law, individual stockholders were liable for the debts of the corporation.
I. It is contended that the individual members were not liable, because the company had paid in their capital stock oí ‡ 80,000, as fixed by a vote of the company ; and that the officers of the company did make and sign a certificate, and make oath to the same, and cause it to be recorded, on the 19th of August 1837 ; and the first question submitted is, whether this certificate is conclusive evidence of the fact, or whether the defendant can go into evidence, to show, notwithstanding this certificate, that the capital stock was not in fact paid in.
It is not denied, that the certificate is in due form, as required by law. In order to determine whether it is conclusive of the fact certified, one method is to inquire the purpose for which it' was intended. By the general law, a corporation is a distinct person from the members composing it, and is capable of making contracts, for the performance of which the corporation aloné-is responsible. By the earlier statutes regulating manufacturing corporations, this was changed, and the individuals were made responsible, after an unsuccessful attempt to obtain satisfaction of the corporation. This being found to be attended with many difficulties, the law was again changed, by St. 1829, c. 53, and placed upon the footing, on which it now stands in the revised statutes. The policy of the law, as it now stands, is this; that all persons having occasion to deal with one of these companies, which is in reality a trading corporation, shall either have the security of a capital stock, actually paid in, and retained, for the purposes contemplated by the incorporation, or the personal security of the individuals composing the corporation But the *121 law looks to the relief of stockholders, as well as the security of those who deal with the company. The stock is divided inte a great number of shares, and there may be as many members as there are shares. But as they are made jointly and severally liable for the whole of the debts of the corporation, if the capital is not paid in, they have a deep interest in knowing that fact Without that security, the responsibility would be so burdensome, and the risk so great — a risk ruinous to almost any private fortune — that persons of property and prudence would be deterred from taking shares. To avoid this great risk, they can only look to the certificate. If a creditor could go behind the certificate, and produce evidence which would satisfy a jury that the capital stock had not all been paid in, and thus charge an individual stockholder, the liability, intended by the statute to be removed, might be diminished indeed, but not taken away. The stockholder may have taken measures to satisfy himself of the fact; he may have obtained the most solemn assurances from all the officers, that the capital was fully paid in ; and yet he might be charged, upon proof aliunde. There is no possible way of carrying out the policy of the statute, so as to afford relief to the stockholders against this enormous responsibility, consistently with reasonable security to the creditors of the corporation, but by making the certificate conclusive.
It is said that the stockholders ought to be responsible, in case the certificate is not true, because the officers who make it are their agents. But we cannot perceive that these officers are their agents, in the sense in which that relation imposes on principals a responsibility for their agents. They are the president, directors, clerk and treasurer of the corporation, appointed by law to do the act, upon which the rights and obligations of various other persons are to depend. Even if they could be considered as in any sense agents of the corporation, they are not agents of the stockholders, in their personal capacity. The individual stockholders may have come in by purchase, by succession, or operation of law, long after such certificate was filed ; and yet, if such certificate is not conclusive —a certificate made pursuant to law, by persons, over whom they had no *122 control, between whom and themselves no relation subsisted, when it was made — they would be rendered liable for large amounts of debts, upon proof of facts, of which they could have ,no knowledge.
There is another view of the subject, which leads to the same conclusion ; which is, that the law has taken care to guard this certificate with the most solemn sanctions, to assure its truth. It is to be made and signed by the president, directors, treasurer and clerk, all the officers who know, and who alone can know, the truth of the fact; it is to be verified by their oaths, and recorded in a public registiy, for the information of all. By the Rev. Sts. c. 38, <§> 19, if any of the said officers shall refuse or neglect to perform any of these duties, they shall be jointly and severally liable for all debts of the company. By *§> 24, notes or obligations of stockholders are not to be received as part of the stock, and no loan is to be made to a stockholder.
Section 28th provides that if any certificate, made as aforesaid, shall be false, all the officers, who shall have signed the same, knowing it to be false, shall be jointly and severally liable for all the debts of the company, contracted while they were officers or stockholders thereof. These provisions, showing the most sedulous care, on the part of the legislature, to ensure the truth of the certificate, indicate their understanding that it should be conclusive.
Some light, we think, is thrown on the subject by the 26th section, which provides that companies before incorporated shall be entitled to the like privilege of exempting the individual members from personal responsibility, by voting to adopt this act, and making and recording a certificate substantially like the one above mentioned. The words are, “ then no stockholder in such company shall be liable for any debts contracted after the recording of such certificate.” Here the words are explicit; no stockholder shall be liable, after the certificate made and recorded. The statute makes it conclusive. But the policy is the same in both cases. The latter, as the individual members had before been liable, required negative words to exempt them. The other provision creates a temporary liability only until the *123 capital is paid in, and a certificate thereof made; carrying a clear implication, that when paid in and certified, they shall not be liable. The only doubt that can arise is from the peculiar phraseology in § 16, which is, that the individuals shall be liable until the whole amount of the capital stock shall have been paid in, and a certificate thereof shall have been made and recorded.” It is argued that these constitute two conditions, and not one condition only, and therefore both must concur, to ensure the exemption ; and therefore, notwithstanding the certificate, if the creditor can prove that it was not paid in, it is a good defence But when we consider the purposes of the act, and the careful provisions made to secure the truth of the certificate, we are of opinion that the legislature, in using this language, intended to prescribe but one condition, namely, the existence of the fact of payment in of the capital, and notice thereof to the public, to be verified and proved in the mode pre scribed. It follows, that upon a compliance with that condition, on the part of the officers, the individual members of the corporation should be exempted from all liability for its debts.
This renders it unnecessary to consider the evidence offered on the one side to prove, and on the other to disprove, the fact, that the capital was paid in, on the 19th of August 1837.
The result therefore is, that the plaintiff, as trustee, and to the extent of the property held under the same trust, was responsible in some form for the note due to the Lancaster Bank, made before said 19th of August 1837, and not for the note made afterwards.
II. Then the question is, whether the bank lost their remedy by bringing their action upon both notes, and consolidating them by one judgment.
It is to be considered, that although individual stockholders are made liable for the debts of the company, yet such liability is collateral. The creditors have the same remedies against the company, as if such collateral liability did not exist. If when they commence a suit against the company, they have several, notes, of different dates, all due, they may unite them all in onei suit; indeed, they are bound to do so,or lose part of their legal‘ *124 costs. They may not know or apprehend, until after recovering a judgment against the company, that they shall have occasion to call on the individual stockholders. Are they precluded from so doing, by consolidating the notes into one judgment ? If upon such notes there had been separate indorsers, or sureties, there would have been no difficulty in commencing suits against such indorsers or sureties, to recover from each that part of the consolidated debt, for which he was liable, which must be ascertained by the note. The note, as against the indorser, would still be resorted to as evidence of his liability, although, as between the holder and the promisor, the note had been consolidated with others, and merged in the judgment. But when this statute liability of stockholders is created, although it is a collateral liability, the statute authorizes a levy of the execution, obtained against the company, to be made on the individua-stockholder. Rev. Sts. c. 38, <§> 30. The provision is, that “ when the stockholders of any manufacturing company shall be liable to pay the debts of such company, or any part thereof, their persons and property may be taken therefor, on any writ of attachment or execution, issued against the company for such debt.”
In this respect, it may be useful to compare ■§> 29 with this <§> 30. Section 29 provides, that when any of the officers of any manufacturing company are made liable by this chapter to pay the debts, or any part thereof, an action shall be brought. In that case, there would be no difficulty. The declaration would set forth the part of the debt for which such officer is liable ; and the fact, that a judgment for the same and other debts had been recovered against the company, would be no impediment. But <§> 30 provides, as above stated, that when stockholders are liable for the debts, or any part thereof, no action is necessary, but their persons or property may be taken therefor, on the execution issued against the company. The whole proceeding is anomalous, and not according to the course of the common law; but, being expressly warranted by the statute, the service must be as nearly conformable to the ordinary course of law as can oe, consistently with the statute. We are of opinion that the statute, in such cases, authorizes the levy of the execution, in *125 whole or in part, on tfie individual stockholder, according as he is in whole or in part liable for the debt. • When therefore the amount levied does not exceed the amount for which the individual is liable, he can take no exception to the legality of the proceeding. Indeed, when the levy is upon property, real or personal, there seems to be no great difficulty. In any mode of serving an execution, issued against a company, upon any individual member’s person or property, the officer must be governed by directions not contained in the precept directed to him. He cannot know by his precept who are the individual stockholders liable thereto, and on whom the creditor elects to levy it. He must receive his information, and take his directions, in that respect, from the creditor; and the statute makes it his duty to follow such directions. Leland v. Marsh, 16 Mass. 389 Marcy v. Clark, 17 Mass. 330. He may, no doubt, in such case, require a suitable and sufficient indemnity from the creditor, before he proceeds to arrest the person or take the property of one not named in his precept.
Now, as the officer, in executing the execution, must, from the necessity of the case, follow the directions of the creditor, and not those of his precept alone, it seems to be no greater departure from the ordinary course of proceeding on executions, to hold that it is competent for the creditor to direct what part of such execution shall be levied upon any person named as an individual member of such corporation.
But we are pressed with the difficulty which would arise, in case the creditor should require the individual to be arrested on such an execution; and it is insisted that he could not release himself without paying the whole debt, though liable only for a part of it. Perhaps, so far as individuals are liable respectively for parts of such debt, it may be considered as a several execution against each for such part as the creditor, by his directions to the officer, shall require him to levy on each; in which cáse, he must take care, at his peril, that no one is charged in execution for any larger part of it than he is liable for. But it is not necessary to express an opinion upon this question, until it arises. We are of opinion, that when property, which is capa *126 ble of division, is taken in satisfaction, and not taken for a greater amount than the individual member is liable for, which was the present case, the levy is good, and that the shares in questioft were rightly taken.
III. A question was raised, in the opening argument for the plaintiff, whether these shares in the hands of the trustee could be specifically taken in execution, and'whether the only remedy for the Lancaster Bank to reach such trust property was not by bill in equity, under the Rev. Sts. c. 44, § 22. By the provision already cited from c. 38, <§> 30, it is expressly stated that the execution, issued against the company, may be levied by taking the persons or property of the stockholders. This, of course, is to be construed with reference to other provisions. We have already seen, that if such stockholder is an executor, administrator, guardian, or trustee, he shall not be personally liable. Of course he cannot be arrested. So, we think, if ¿he property is of such a nature, or in such a condition, that it <-an-not be reached by an execution, or, if reached, such that an officer cannot dispose of it, that clause of the statute will not a]-ply, and the creditor may be driven to seek his remedy in equity, under the provision cited from Rev. Sts. c. 44, § 22. II the property be held by an executor or administrator, he can only be charged de bonis iestatoris, and if insolvent, then jpro rata. If the property in the hands of a guardian or trustee should consist of shares, which an officer could not take and sell on execution, a decree in equity to ascertain the amount and direct a sale, or the appointment of a receiver, might be necessary. If the fund were chargeable with advances and expenses, or for any other cause a discovery and account should be necessary, then perhaps the only remedy would be for the creditor to file his bill. But as a trustee is still a stockholder, we are of opinion, that when the property is of such a nature, that it may be reached by an execution, and levied upon by an officer, it may be taken by force of the statute, as in other cases of stockholders, if not liable to prior claims of the trustee. The remedies are concurrent, and either may be pursued which is best adapted to the particular case. Shares *127 m incorporated companies are liable, like chattels, to be taken on execution, and sold in the manner specially provided by law. As there has been no intimation that the trustee had himself any claim upon the fund, or that any account was necessary to be adjusted between himself and the cestui que trust, and as no facts are embraced in the agreed statement, from which such an inference could be drawn, we are of opinion that the shares in the present case were rightly taken on the execution against the American Stationers Company.

Plaintiff nonsuit.