Shaw, C. J.
The first named suit is an action of assump-sit, brought against Coffin, Hooper, and Bullard, assignees of Horace Gray & Company, insolvent debtors. These proceedings in insolvency were commenced upon the application of Horace Gray and Company, on the 24th of November, 1847. The first publication of notice took place on the 25th; and, on the 7th of December following, the defendants were appointed assignees, and a regular assignment was executed to them by the master.
Amongst the assets of the insolvents, were eighty-five shares in the capital stock of the Boston Iron Company, estimated, at par, at $1,000 a share, making $85,000.
This was a manufacturing corporation, established by an act passed on the 13th of June, 1822, and held its first meeting on the 27th of December, 1826. This corporation was declared to be invested with the powers and subject to the duties of the general act, St. 1808, c. 65,- and the several acts in addition thereto. The additional acts then in force were St. 1817, c. 183, passed February 24, 1818, and St. 1821, c. 38, passed January 28, 1822. These weie the three acts to which the Boston Iron Company was expressly made subject.
*197 The action is brought against these assignees, as members and stockholders, having become so by acceptance of the assignment, and by reason of the personal liability of members and stockholders of manufacturing corporations, by some of the laws of Massachusetts, for debts due from such manufacturing corporations. The plaintiff insists that, notwithstanding he is himself a member and stockholder in the same corporation, yet he may contract with them, and become a creditor to them, in the same manner as any other person might do; and, therefore, having become a creditor to the corporation, after the defendants, in their capacity as assignees, had thus become individual members and stockholders, he may maintain an action against them, on such statute liability.
The debt alleged to have accrued to the plaintiff against the corporation may be briefly stated. At the time of the failure and insolvency of Horace Gray & Company, in November, 1847, they held, as above stated, about eighty-five shares in the stock of the Boston Iron Company, consisting of two hundred shares ; that Francis C. Gray, the plaintiff, held also about eighty-five shares, leaving about thirty shares distributable among a few other persons. Horace Gray & Company had long been the general agents of the Boston Iron Company, and, upon the failure of these agents, the affairs of the company were exceedingly perplexed. They owed a very large amount of debts, and had on hand a large stock of materials, and means for carrying on their business, and had unexecuted contracts to a large amount, for the supply of iron rails, and other work. In December, 1847, the corporation made a mortgage to Francis C. Gray, the plaintiff, of a great part of their works and materials. Early in January, 1848, the corporation, with the consent of the plaintiff, made a general transfer of all their property to William Appleton & Company, with full powers to them, as agents, to purchase and sell and carry on the business ; the plaintiff entered into a stipulation with Appleton & Company to guarantee all that should become due from them to Appleton & Company, and to indemnify them against all their engagements, on *198 behalf of the company, under the unlimited agency thus created. Before the end of the year, Messrs. Appleton & Company rendered their account of debts paid, property sold, and money received, making a balance of about $47,000 due from the company to Appleton, which, pursuant to his guaranty, the plaintiff paid to Appleton, with the knowledge and at the request of the company, and thereby the plaintiff became the creditor of the corporation to this amount.
He claims to be a creditor for another sum of about $9,000, paid by the plaintiff for the use and benefit of the corporation. In an account stated and annexed, there appears to be a sum debited to the plaintiff, to meet this last claim,' of about $11,000, which would overbalance his last claim by about $2,000. But the amount is not material; it is rather the character and date of the debt which is now in question. It appears that this sum consisted of the payment of two notes, made by the corporation and indorsed by the plaintiff as an accommodation indorser, dated March 1,1848, payable in one year, and paid by the plaintiff at maturity. In one clause in the report it is stated, that these notes, given some months after the failure and assignment of Horace Gray & Company, were in renewal of notes given before their insolvency, for the same amounts. It is obvious that the term “renewal” does not mean another note by the same parties, continuing a former note of the like tenor; because it is stated, immediately after, that the plaintiff was not indorser of such former notes. The renewed notes, thus for the first time indorsed by the plaintiff, were so indorsed by the special request of the treasurer, and were subsequently paid by the plaintiff, by the like special request.
From this view of the debt due from the corporation to the plaintiff, it is manifest, not only that it accrued as a debt long after the insolvency, but that the undertaking of the plaintiff in behalf of the company, which was the origin and cause of such indebtedness, commenced after the assignment. The bulk of the claim was a debt paid to the said Appleton & Company, at the special instance and request of the corporation; and the debt due to William Appleton & Company thus paid, *199 originated in transactions which commenced after the insolvency and assignment.
It is very clear that no such liability to an action exists at common law; and the question is, whether it can be established by force of any or all of the numerous statutes of this commonwealth, applicable exclusively to manufacturing corporations. To create any individual liability of members for the debt of a corporation, a body politic, created by law, and regarded as a legal being, distinct from that of all the members composing it, and capable of contracting and being contracted with as a person, is a wide departure from established rules of law, founded in considerations of public policy, and depending solely upon provisions of positive law. It is, therefore, to be construed strictly, and not extended beyond the limits to which it is plainly carried by such provisions of statute.
The claim of the plaintiff, in the present case, proceeds on the ground that, as the Boston Iron Company was incorporated on the 13th of June, 1822, it was governed by the provisions of St. 1808, c. 65, St. 1817, c. 183, and St. 1821, c. 138, being those to which it was expressly made subject; and, as the subsequent acts affected only corporations subsequently established, or corporations previously established which might subsequently adopt them, which this corporation did not, it depends wholly upon the statutes in force when it was incorporated. If it stood upon the Rev. Sts. c. 38 alone, there might be some plausibility in this argument. That chapter is limited to the rights and duties of manufacturing corporations and their members. The basis of that chapter was the next previous general statute on the subject, St. 1829, c. 53, passed February 23,1830; it adopts and reenacts nearly all the provisions in the act, and is made applicable to all corporations to be established afterwards; to all which had been established since February 23, 1830; and all which had been before established, which should vote to accept its provisions, and proceed to conform to the provisions of § 27, for certifying, recording, and publishing a statement of their capital, debts, and assets.
*200 By the statute following that of 1829, it is provided, § 34, that no persons holding stock in any manufacturing company, as executors, administrators, guardians, or trustees, shall be personally liable, &c. The argument is, that this only applies to the corporations therein referred to, incorporated after February 23, 1830, or adopting the provisions of this chapter; although there is a provision, § 36, that all manufacturing corporations now existing shall continue to enjoy, &c., and subject, &e., according to their charters and the laws then in force, except so far as said powers, privileges, and liabilities shall be modified and controlled by the provisions of .this chapter. It would seem, therefore, that it was intended not merely to reenact existing provisions, but to make some further provisions ; and, as the provision of § 34, respecting stock held by trustees, is general in its nature, there is good ground to Delieve, especially as an analogous provision, when first introduced in St. 1826, was manifestly intended as a declaratory act, declaring that former acts should not be construed to render trustees, &c., personally liable, that this was intended to be general, and extend to all corporations.
But we are relieved from the necessity of considering thf* subject of the construction of this act more particularly, by the subsequent legislative act, St. 1838, c. 98, passed April 10. 1838. This act was general in its nature, extended to mem bers of all corporations, providing to what extent they shoulc-be liable to the claims of creditors, and all persons dealing with and becoming creditors of any corporation. It was future and prospective in its operation, regulating the rights of debtor and creditor, as they should afterwards arise, expressly securing any right acquired by any person against a holder of stock in any corporation, by forcé of existing laws. It had no tendency to impair, or in any way affect or modify, any power, privilege, or immunity, pertaining to the franchise of any corporation, and, therefore, seems to be within the just limits of legislative power. This act passed many years before the supposed liability of these defendants is alleged to have accrued, and we are therefore of opinion that it governs the present case. ■
*201 By this act, it is provided that no persons holding stock in any corporation, as executors, administrators, guardians, or trustees, shall be personally subject to any liabilities, as stockholders of such corporation; but the estates and funds in their hands shall be liable, in like manner and to the same extent, as the deceased testator or intestate, or the -ward, or person interested in such trust fund would have been, if they had respectively been living and competent to act, and held the same in their own names.
The question arises upon the construction of this statute, of which there has been very little judicial consideration. The case of Stedman v. Eveleth, 6 Met. 114, was somewhat peculiar. It was the case of a trustee, who held a trust fund for the purpose of investment and income, perfectly solvent, who held shares in a manufacturing corporation, which had not complied with the provisions of the law, to exempt the individual members from personal liability. The officer had seized and sold stock in another corporation, part of the same trust fund, and the trustee brought trespass against the sheriff. All objection to the course of proceeding and form of action was expressly waived, and the only question submitted to the court was, whether the fund was liable, in the hands of the trustee, and the court held that it was. Whether the course of proceeding, to enforce such a claim, should be by action or by bill in equity; what would be the case had the fund been insufficient to satisfy all legal claims upon it, was not at all considered in that case.
Similar and greater difficulties might arise in applying these provisions to the case of an executor or administrator. The effect of the statute would seem to charge the estate of the deceased with a liability not higher in its nature than a debt. If the estate were solvent, perhaps an action would lie, in which the creditor might have a judgment de bonis testatoris, so as to charge the assets. But in case of insolvency, such charge having no preference over other debts, entitled to be paid pari passu, it would seem inconsistent with the rule of equity, and with the established rule in regard to estates of deceased insolvents, to permit such creditor to have a judg> *202 ment against the executor de bonis propriis, which would require him to pay in full if the estate was not sufficient, because all other creditors have an equally valid claim to full satisfaction. It would seem to be more conformable to general rules governing the settlement of estates, that a person holding such a claim, made a charge on the estate by operation of law, should either go before the commissioners and offer his claim for proof; but if not within their power, because not strictly a debt, then to file his bill in equity. But, in either of these courses of proceeding, seeking equity he must do equity, and, to that end, he must first apply all the funds in his hands, under his own control, all mortgaged property and other collateral security specially liable, and prove only for the deficiency. Amory v. Francis, 16 Mass. 308. So, if the claimant himself was liable to contribute to the same fund, an account must be taken, and all legal and equitable matters of set-off would be deducted. McDonald v. Webster, 2 Mass. 498; Bordman v. Smith, 4 Pick. 212.
In case of a guardian, where the shares of a manufacturing corporation are held as an investment, and for purposes of income, and where the ward has other property, and is not insolvent, an action, perhaps, would be sustained; but the statute must be construed according to the subject-matter, and as the subjects to which it is applicable are various, it may have a different application to the different subjects embraced in it.
But it may not be necessary or useful to pursue this inquiry further, because the views we have taken of the liability of these defendants, as assignees of an insolvent estate, render it unnecessary.
We are not disposed to deny that assignees under the insolvent laws, are, to many purposes, trustees. They are officers of the law, whose powers and duties are prescribed, limited, and regulated by law ; still, they hold a fiduciary relation and character, like executors, administrators and guardians, who are also trustees. We have no disposition to doubt that they would be chargeable as trustees, under the equity jurisdiction of this eourt. But this does not decide this question; it is necessary *203 to look more carefully to the provisions of law constituting that trust and regulating its execution.
Assignees are officers of the law, in the nature of receivers, appointed to collect and distribute the effects of an estate, which has already come to á close, — a civil death,— and requires only the time necessary to wind it up.
The statute in question, charging funds in the hands of a trustee, was passed April 10, 1838, to go into operation immediately. The general insolvent law, under which the defendants were appointed assignees, was passed April 23, 1838, to go into operation the 1st of August following. So far as the enactments of the latter act are inconsistent or conflicting with those of the former, those of the former are, to that extent, modified or repealed. "Whether the general term "trustees,” would have included this peculiar class of officers, had the insolvent law preceded, might have been a more difficult, perhaps a different question ; because, as already stated, when the statute of 1838, charging fmids in the hands of trustees, was enacted, there was no provision for appointing such a class of officers as assignees under an insolvent law ; if there had been, the general phraseology might have been so modified as to exclude assignees. As it is, the rule I have stated applies ; the last expression of the legislative will constitutes the law, and if it is repugnant to any former provision, it repeals it.
The insolvent law is full and explicit, as to the claims against the estate of the insolvent. St. 1838, c. 163. The proof of debts is limited to debts due at the time of the first publication of notice; debts due but not then payable; debts then created but due on a contingency, if the contingency happen before dividend; suretyship, taken for the debts before, although the same may not ripen into a debt until after, and paid after; such debt is considered as contracted when the suretyship was assumed, and not when paid by the surety; and these strong negative words are added, “ and no debt other than those above mentioned shall be proved or allowed against the estate assigned as aforesaid.” The plaintiff’s claim is neither within the letter nor the equity of this provis *204 ion. It was not only a debt, if debt at all, which accrued after the assignment; but the contract and dealings of the plaintiff with the corporation, out of which it is supposed to have grown, commenced after the assignment.
The assignment vests all the property and all the debts due the insolvent, in the assignee, and dissolves all attachment on it. It authorizes the assignee to redeem all property, subject to any pledges or liens. The debtor’s shares vest in the assignees; if they are subject to any lien for assessments or other charges, the assignees may redeem them, if it is for the interest of the estate, but they are not obliged to do so. Andrews v. Callender, 13 Pick. 484.
All preferences are prohibited, and equal distribution amongst all creditors, after the application and deduction of all collateral securities and counter claims, is provided for by the insolvent law, and everywhere insisted on, as being of the spirit of the system. A very few privileged debts only are admitted, such as debts due the government, and a very small amount as wages due to actual laborers. Dividends are to be made to all creditors who have proved, in proportion to then- debts. By § 25, all laws inconsistent with these provisions are repealed, leaving rights actually accrued under them.
But, supposing that there is any error or mistake in the true construction of the statutes, on which the foregoing conclusion is founded, and that the legislature never intended that either the act of 1829, nor the revised statutes, in regard to persons holding shares, should apply to manufacturing corporations, neither chartered after its passage, nor accepting and adopting its provisions ; still, the court are of opinion that the result would be the same.
The argument is, that- as each successive corporation was created, it was made subject to the acts then in force, and that corporations created previously were not affected, nor were intended to be affected, by the acts passed afterwards. It is conceded that the iron company was chartered in 1822, and has never since adopted and accepted the provisions of the subsequent acts, according to their terms and requisitions, so as, by force of such adoption, to bring itself under their *205 operation. The result would be, that this corporation, and its members, must be governed by the acts of 1808, of 1817, and 1821.
In taking this view, we assume that the next succeeding act, St. 1826, c. 137, although in terms a declaratory act, limiting the liability of individual members, does not apply to it; and probably we are right in so assuming, because it was after in time, and because there was a provision that it should extend to corporations previously established, if they should adopt it by vote, and give a prescribed notice, which they never did. But if it could be held to apply, it would be decisive against the liability. It declared that the previous statutes should not be so construed as to render personally liable persons holding stock as executors, administrators, guardians, or trustees, nor any persons holding such stock as collateral security. It does further proceed to provide, that the funds in their hands should be liable. That provision was first introduced into the more general act of 1829, c. 53, which prescribed an entire new system, regulating the accountability of individual members, both the principle and conditions on which it should depend, and the modes of carrying it into effect. The question, therefore, still recurs, what would be the title of the plaintiff to maintain his action, by force of the first three acts.
By the St. of 1808, no liability as for a debt was charged on the stockholder; the provision was, that an execution recovered against the corporation might be levied on the individual member. Leland v. Marsh, 16 Mass. 389; Marcy v. Clark, 17 Mass. 330.
This construction was uniform, it created a new right, and gave a precise and specific remedy, which must be strictly pursued, and it was held to create no charge upon the estate of a deceased member. Ripley v. Sampson, 10 Pick. 371.
The statute of 1817 went no further in regard to the nature of this liability, but provided that the liability, such as it was, should extend to those who were members when the debt accrued.
The ground of the argument is, that St. 1821, c. 38, went *206 further and imposed the liability on the stockholders, as a debt, for which the common law affords a remedy by action. It is very short, and enacts that every person who shall become a member, &c., shall be liable in his individual capacity for all debts contracted during the time of his continuing a member.
Supposing this the true construction, the argument is, that the statute declares the stockholder to be a debtor; being placed under an obligation to pay the debt of the corporation, that the common law gives a remedy by action of debt, or indebitatus assumpsit, and that all the consequences of this relation and obligation created by law follow.
Assuming this to be so, the argument in behalf of the plaintiff is, that a member of the corporation may as well be a creditor of the corporation as any other, and may have an action, recover judgment, and levy execution. Peirce v. Partridge, 3 Met. 44.
And it is further argued that, because he may be the creditor, and have a judgment against the corporation, he may also, like any other creditor, have the. collateral remedy over upon any individual member, as provided for by this statute. But this is by no means a just conclusion. The obligation is declared by this statute, but the remedy, as the case supposes, is sought at the common law; it must, therefore, be limited and controlled by the rules of the common law. Now, if the member, who has become a creditor of the corporation, say A., could recover against B., another member, B., by paying the debt, would, in his turn, become a creditor of the corporation, and might have his action against any one or all the other members, and amongst the rest, against A., to recover the, money back again. Now when a case is so situated that, if one can recover against another, and the latter can turn round and recover the money back, the law, by way of rebutter, and to avoid circuity of action, holds such liability a defence to the first action. Supposing, by way of illustration, that there be a note in circulation, with a promisor and several indorsers, of whom A. is the first, and B. the second ; it is indorsed by several others, and subsequently, in the course of business, *207 comes again to A., as indorsee, after these other indorsements. As such indorsee, A. sues B. as his prior indorser, which any other indorser might do. B. answers that, though true it is, he is liable to pay it to A., as indorsee, yet he would háve an immediate action over against A., as his prior indorser, and this shall be a good defence by way of rebutter.
It is no answer to say, that, by subsequent acts, a member who has been compelled to pay the debt of the corporation, has a remedy in equity, by contribution, against other members. The case we are now supposing excludes all these subsequent acts, and rests solely on the principles of the common law, acting upon the liability declared by the statute of 1821. Loolting at the facts, it appears that, when the debt to the plaintiff became due from the corporation, and ever since, Mr. Gray has been, and still is, an individual member of the same corporation; that if he could recover against the defendants, upon St. 1821, they, in turn, would become creditors of the corporation, and might bring their action and recover the same amount against him, the court are of opinion that this would be a good bar to this action.
The court are of opinion that it adds nothing to the legal claim of the plaintiff, that the assignees attended meetings of the stockholders after the assignment, and voted as stockholders. The assignment undoubtedly devested the original right of Horace Gray and company, and the legal interest and property in the shares vested in the assignees. But this leaves the question entirely open, what liabilities they came under, especially to another stockholder. Whatever valuable interest there was in the shares they held for the creditors. We think, therefore, that they were bound to attend to the interest of the creditors, and to attend meetings, if such interest required it.
This might be, and to all appearance was, a valuable property. This depended altogether upon the question, whether there would be a surplus to divide amongst the shareholders, after paying all its debts.
If the corporation has enough to pay all its debts, the plaintiff can lose nothing, because the whole capital of the company *208 is bound by law for his debt; and, in addition, he holds a mortgage upon all their property for his reimbursement. The assignees had a right to look after this interest, and obtain a surplus, if practicable, and their attendance at meetings for that purpose, did not subject them, or the property in their hands, to any liability that did not exist without it.
The property was vested in them by assignment, and their interest was in the surplus, and they might continue to act until it should appear that there was no surplus.
The opinion here given, we think, disposes of the bill in equity, so far, at least, as Coffin, Hooper, and Bullard, as assignees of Horace Gray and company are concerned. It proceeds on the ground that the complainant became a creditor of the corporation; that the respondents equally with himself, became liable for the debts of the corporation, in their individual capacity to pay, and therefore, upon principles of equity, he claims a contribution. As to the assignees, he avers that they became liable as such assignees, and have other funds of the same trust, sufficient to meet their contributory share to his debt.
The complainant is here met by the objections hereinbefore stated, against the right of the complainant to proceed at all in equity, for a contribution, until he has entirely applied and exhausted the property of the corporation bound to reimburse him, but more especially the property specially mortgaged to him as collateral security for the advances which constitute his demand on the corporation, which objection lies to the whole bill, as it now stands. But, in' addition, it proceeds upon" the assumption, so far as it seeks to charge Coffin, Bul-lard and Hooper, as assignees, that they are liable, as debtors to the estate, in common with himself and, others, and the contribution is sought on that ground. Having decided that they are not so liable to an action, that decision is equally conclusive, so far as they are concerned, against the claims made by the bill. In these two cases therefore, judgment will be for the defendants. In the suit at law against the corporation, judgment for the plaintiff, according to the agreed statement. of facts.

Judgment accordingly.